**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**AT BECKLEY**

DOUGLAS PATRICK HUMPHREY,

Petitioner,

v.

CIVIL ACTION NO. 5:26-cv-00403
CRIMINAL ACTION NO. 5:21-cr-00005

UNITED STATES OF AMERICA,

Respondent.

**MEMORANDUM OPINION AND ORDER**

Pending is Petitioner Douglas Patrick Humphrey's Petition to Vacate, Set Aside or Correct Sentence, filed June 12, 2026. [ECF 86]. On July 7, 2026, the United States responded in opposition. [ECF 90]. On July 14, 2026, Mr. Humphrey replied. [ECF 91]. This matter is now ready for adjudication.

**I.**

On March 19, 2021, Douglas Patrick Humphrey pled guilty to attempted production of child pornography in violation of 18 U.S.C. § 2251(a) and (e), as charged in Count One of the Information filed against him. [ECF 27]. On September 10, 2021, Mr. Humphrey was sentenced to 360 months in prison, followed by a term of supervised release for life, and a special assessment of $5,100. [ECF 53]. [1]

---

[1] Mr. Humphrey was ordered to pay a special assessment of $100, plus an additional special assessment of $5,000 under the Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22, for a total special assessment of $5,100. [ECF 53 at 10]. On October 14, 2021, Mr. Humphrey appealed to our Court of Appeals concerning payment of the additional $5,000 special assessment. [ECF 62]. On April 20, 2022, our Court of Appeals "grant[ed] the motion and remand[ed] the case to the district court to provide the district court an opportunity to make factual findings regarding the applicability of the special assessment pursuant to 18 U.S.C. § 3014." [ECF 73]. On June 12,

Mr. Humphrey's conviction arose from an incident involving a then 15-year-old minor female ("Minor Female 1[2]"). [ECF 3]. Law enforcement became involved when Minor Female 1's mother contacted the Raleigh County Sheriff's Office expressing concern over her daughter sneaking out to meet with a 27-year-old named "Zach" who "knew [her daughter] was a minor." [*Id.* at ¶ 6]. Minor Female 1's mother then gave law enforcement consent to take over her daughter's Snapchat[3] account. [*Id.* at ¶ 7]. During an interview with Minor Female 1, law enforcement discovered "Zach" asked Minor Female 1 "to take a video of herself having sex with another man and send it to him via Snapchat." [*Id.* at ¶ 10]. Minor Female 1 did as he requested and sent the video to username "c_altsnap." [*Id.*].

Through investigation, "law enforcement identified the IP address associated with the Snapchat account 'c_altsnap' belonged to the residence of" Douglas Patrick Humphrey. [*Id.* at ¶ 12]. An undercover officer then took over Minor Female 1's Snapchat account to communicate with Mr. Humphrey. [*Id.* at ¶ 19]. After a conversation which discussed Mr. Humphrey meeting up with Minor Female 1, law enforcement observed Mr. Humphrey's vehicle leave his residence and officers followed the vehicle until it "arrived to the area where the [undercover officer] had arranged for 'c_altsnap' to meet Minor Female 1 after they had discussed engaging in sexual activity." [*Id.* at ¶ 20]. Mr. Humphrey was in the vehicle and was subsequently arrested for

---

2025, the Court found Mr. Humphrey non-indigent for purposes of 18 U.S.C. § 3014 and ordered Mr. Humphrey to continue making payments towards the $5,000 additional special assessment. [ECF 85 at 3].

[2] Mr. Humphrey was also accused of sexually assaulting a 13-year-old minor female, known as Minor Female 2. Mr. Humphrey, however, was not identified as the offender until after his arrest in the instant case. [ECF 39 at 2].

[3] "Snapchat is a cellphone application that allows users to share messages, images, and short videos with other users through use of either the Internet or cellular networks (both of which are a means and facility of interstate commerce)." [ECF 53 at ¶ 5].

solicitation of a minor. [*Id.* at ¶ 20]. Mr. Humphrey admitted he was the user of "c_altsnap" and was communicating with Minor Female 1. [*Id.* at ¶ 21]. Mr. Humphrey claimed he never had sexual intercourse with Minor Female 1. [*Id.* at ¶ 24].

On February 12, 2021, Mr. Humphrey signed a plea agreement with the United States, acknowledging, among other things, the term of imprisonment for a violation of 18 U.S.C. § 2251(a) and (e) is "a period of at least 15 and up to 30 years," and the term of supervised release is "5 years to life." [ECF 33 at 1-2]. At sentencing, Mr. Humphrey's total offense level of 40 and criminal history category of I resulted in an advisory sentencing guideline range of 292 to 365 months. [ECF 56 at ¶ 83]. However, the statutorily authorized maximum sentence is 30 years; thus, the guideline range was 292 to 360 months. [*Id.*].

Mr. Humphrey now brings this Petition to Vacate, Set Aside or Correct Sentence, claiming ineffective assistance of counsel. [ECF 86]. Specifically, Mr. Humphrey asserts his court appointed counsel misrepresented to him and his family the terms of imprisonment and supervised release by falsely advising Mr. Humphrey would likely receive a term of imprisonment between 5 and 7 years and the maximum sentence Mr. Humphrey could receive was 15 years imprisonment. [*Id.* at 2, ECF 86-1 at ¶ 3]. Mr. Humphrey claims had he known he was facing a maximum sentence of up to 30 years, he would not have plead guilty, nor would he have accepted the plea agreement. [*Id.* at 2-3].

On July 7, 2026, the Government responded in opposition, asserting Mr. Humphrey's Petition [ECF 86] is without merit, and any misinformation provided by counsel was corrected by the Rule 11 plea colloquy between the Court and Mr. Humphrey under the *Federal Rules of Evidence*. [ECF 90 at 7]. Specifically, the Government asserts the terms of imprisonment and supervised release were in the plea agreement and Mr. Humphrey reviewed, read, and signed

the agreement, the Court stated and confirmed the correct terms of imprisonment and supervised release numerous times during Mr. Humphrey's plea hearing and sentencing hearing, and Mr. Humphrey responded he understood the Court's statements regarding his maximum term of imprisonment and supervised release. [*Id.* at 8].

***A. Governing Standard***

To succeed on a claim for ineffective assistance of counsel, Mr. Humphrey must show both (1) counsel's performance was constitutionally deficient, and (2) such deficient performance was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 685 (1984). Performance is deemed constitutionally deficient when it falls below an objective standard of reasonableness under "prevailing professional norms." *Id.* at 688. In evaluating counsel's conduct, the Court must look to "'counsel's perspective at the time' and apply 'a strong presumption that counsel's representation was within the wide range of reasonable professional assistance in order to eliminate the distorting effects of hindsight.'" *United States v. Martinovich*, 777 Fed. App'x 608, 610 (2019) (quoting *Christian v. Ballard*, 792 F.3d 427, 443 (4th Cir. 2015)). To satisfy the first prong, Mr. Humphrey must show counsel's errors were "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland,* 466 U.S. at 687. To satisfy the second prong, Mr. Humphrey must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *United States v. Martinovich*, 777 Fed. App'x 608, 610 (2019) (citing *Strickland*, 466 U.S. 668, 694 (1984)). A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*

***B. Analysis***

To succeed on his ineffective assistance of counsel claim, Mr. Humphrey must show both (1) his counsel's performance was deficient, and (2) this deficiency resulted in prejudice. As to his counsel's deficient performance, Mr. Humphrey asserts his counsel represented to him the maximum term imprisonment was 15 years, not between 15 and 30 years, and counsel failed to advise him of the possibility of a lifetime term of supervised release. [ECF 86 at 2]. In support of this contention, Mr. Humphrey points to his plea hearing, during which counsel stated Mr. Humphrey was "aware[] that he's going away for 15 years and [hopes] that his family will be able to spend some time with him before he goes away for 15 years." [ECF 86-6]. Mr. Humphrey also points to where he first answered "no" to the Court's question of whether "each of the paragraphs [of the plea agreement] were discussed with you prior to you reaching an agreement with the Government[.]" [ECF 86-7]. When prompted again by the Court, Mr. Humphrey responded "[y]es, they were, actually." [*Id.*]. Mr. Humphrey asserts these instances solidify the fact he was unaware of the maximum term of imprisonment being 30 years with the possibility of lifetime supervised release. [ECF 86].

As to prejudice resulting from counsel's deficiency, Mr. Humphrey asserts he would not have pled guilty or entered into a plea agreement with the United States had he been properly advised of his maximum sentence terms. [ECF 86 at 2-3]. Mr. Humphrey states his primary rationale behind entering into the plea agreement was the mistaken belief that his sentence exposure would be reduced if he pled guilty rather than proceed to trial, when in fact proceeding to trial carried no additional sentencing risk. [*Id.* at 10-11].

**1. Deficient Performance**

Mr. Humphrey points to *Hammond v. United States* in support of his argument. 528 F.2d 15 (4th Cir. 1975). In *Hammond*, counsel stated Mr. Hammond would receive 90 years in prison if he went to trial and was convicted, whereas Mr. Hammond's plea agreement stated the maximum sentence he would receive was 25 years. *Id.* at 16. *Hammond* is factually different from this case. Here, counsel represented the maximum sentence Mr. Humphrey could receive was lower than the actual maximum sentence he could receive, whereas in *Hammond*, counsel represented Mr. Hammond would receive a sentence of 90 years if he went to trial, which was not true. *Id.*

Mr. Hammond sidestepped a trial based on his mistaken belief he would receive essentially a life sentence if convicted. *Id.* In the instant case, Mr. Humphrey took the plea based upon is professed mistaken belief he would expose himself to a higher sentence if he went to trial and was convicted. [ECF 86 at 10]. Had Mr. Humphrey gone to trial, the Government would have charged him with additional counts, exposing Mr. Humphrey to life in prison if convicted. [ECF 90 at 11-12]. Moreover, the terms of the sentence were clearly laid out in the plea agreement Mr. Humphrey read and signed; this was not the case in *Hammond*. In *Hammond*, counsel's statements that he would be facing 90 years if he went to trial were reasonably believed by Mr. Hammond because the information given to him by the clerk of the district court led him to believe he faced a total maximum sentence of 95 years. *Hammond*, 528 F.2d at 16. Here, however, Mr. Humphrey was advised multiple times the sentence imposed on the single count charged against him was a term of imprisonment between 15 and 30 years and a term of supervised release between 5 years and life.

Mr. Humphrey contends he first responded "no" to the Court's question of whether "each of the paragraphs [of the plea agreement] were discussed with you prior to you reaching an

agreement with the Government[.]" [ECF 86-7]. However, when prompted again by the Court, Mr. Humphrey responded "[y]es, they were, actually." [*Id.*]. Although Mr. Humphrey alleges his counsel failed to notify him of his potential sentence of 15 to 30 years imprisonment and 5 years to life supervised release, Mr. Humphrey has not conclusively shown his counsel failed to inform him of the terms of the plea agreement. Our Court of Appeals has stated defense counsel must present the client with the "probable outcomes of both the guilt and sentencing phases." *Jones v. Murray*, 947 F.2d 1106, 1111 (4th Cir. 1991). The Court is unaware of the conversations between Mr. Humphrey and his counsel. However, even if counsel failed to present Mr. Humphrey with the possible outcomes, Mr. Humphrey is unable to show counsel's deficiencies were prejudicial to him, as discussed below.

**2. Prejudice**

Even if deficient performance can be shown, Mr. Humphrey must show counsel's deficient performance was prejudicial. Mr. Humphrey cannot show counsel's alleged deficiency was prejudicial. Prejudice may be shown by "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lee v. United States*, 582 U.S. 357, 364, 137 S. Ct. 1958, 1964 (2017) (internal citations and quotation marks omitted). "Judges should . . . look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Id.* at 369.

Regardless of counsel's assertions to Mr. Humphrey, Mr. Humphrey read, understood, and signed the plea agreement. [ECF 33 at 1-2; *see* ECF 90-1 at 10-11]. Thus, even if his counsel stated otherwise, Mr. Humphrey was aware of the sentencing range and voluntarily entered into the plea agreement which stated the term of imprisonment could be between 15 to 30 years, and the term of supervised release could be between 5 years to life. [ECF 33 at 1-2].

Mr. Humphrey cites *United States v. Lewis* to support his argument. 477 F. App'x 79 (4th Cir. 2012). In *Lewis*, our Court of Appeals determined counsel gave Mr. Lewis "legal advice predicated on a plainly false interpretation of federal law" because counsel misadvised Mr. Lewis that he would be subject to "either the career offender enhancement or the mandatory life sentence." *Id.* at 82. Mr. Lewis was advised he would receive a mandatory life sentence if he pled guilty and was convicted when he actually faced a *maximum* life sentence, not a *mandatory* one. *Id.* at 82-83. Thus, Mr. Lewis did not go to trial because of his erroneous belief that doing so subjected him to a mandatory life sentence of imprisonment if convicted. *Id.*

Our Court of Appeals recognized Mr. Lewis was hesitant to plead guilty even under his erroneous belief, noting he did not plead guilty until the third hearing. *Id.* at 83. In the instant case, Mr. Humphrey pled guilty and was aware of the terms of sentencing throughout the case. Additionally, Mr. Humphrey was not advised of any mandatory sentence, let alone a mandatory life sentence of imprisonment. Although Mr. Humphrey claims he was unaware of the maximum supervised release term of life, the record indicates otherwise. [ECF 86 at 7-8]. Mr. Humphrey read and signed a plea agreement stating the term of supervised release was 5 years to life. [ECF 33 at 2]. Mr. Humphrey was also advised of this term by the Court at both the plea hearing and the sentencing hearing. [ECF 90-1 at 24-25; ECF 90-2 at 6].

Our Court of Appeals has held where a court properly informs the defendant "of the potential sentence he faced, he could not be prejudiced by any misinformation his counsel allegedly provided him." *United States v. Foster*, 68 F.3d 86, 88 (4th Cir. 1995). "[I]f the information given by the court at the Rule 11 hearing corrects or clarifies the earlier erroneous information given by the defendant's attorney and the defendant admits to understanding the court's advice, the criminal justice system must be able to rely on the subsequent dialogue between the

court and defendant." *Id.* (quoting *United States v. Lambey*, 974 F.2d 1389, 1395 (4th Cir.1992)). The Court conducted a Rule 11 colloquy during Mr. Humphrey's plea hearing and, after doing so, the Court found Mr. Humphrey understood "the nature of the charge and the consequences of pleading guilty." [ECF 90-1 at 32]. Accordingly, it cannot be shown counsel's deficient performance prejudiced Mr. Humphrey in any way.

Additionally, Mr. Humphrey confirmed his understanding of the plea agreement between himself and the Government. During Mr. Humphrey's plea hearing, the Court assured Mr. Humphrey could read and write and was competent. [ECF 90-1 at 3, 6]. During the plea hearing, the Government "summarized the terms of the plea agreement, . . . which explained that the penalty for the offense was 15 to 30 years in prison and up to a lifetime term of supervised release," which Mr. Humphrey confirmed he read, understood, and signed. [ECF 33 at 2-3; ECF 90 at 3, 8; ECF 90-1 at 7, 10]. The Court stated during both Mr. Humphrey's sentencing hearing and his plea hearing Mr. Humphrey would be facing a term of 15 years to 30 years imprisonment and a term of 5 years to life on supervised release. [ECF 90-1 at 24-25; ECF 90-2 at 6]. There is thus no evidence supporting Mr. Humphrey's claim. Throughout the criminal proceedings, Mr. Humphrey never indicated he was unaware of the penalties about which he now complains, nor did he speak up about an alleged miscommunication between himself and his counsel. Accordingly, Mr. Humphrey cannot show he was prejudiced by any alleged deficiencies made by counsel.

**3. Hearing**

Mr. Humphrey contends an evidentiary hearing is required under 28 U.S.C. § 2255(b) because the allegations against counsel turn on attorney-client communications. [ECF 86 at 4]. 28 U.S.C. § 2255(b) states:

> Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

[*Id.*]. In its response, the Government asserts no hearing is required because Mr. Humphrey cannot show prejudice and, thus, the Petition [ECF 86] should be denied without hearing. [ECF 90 at 12]. The Court agrees. No hearing is warranted based upon the record.

**II.**

Accordingly, the Court **DENIES** the Petition [**ECF 86**] to Vacate, Set Aside, or Correct a Sentence.

Additionally, pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability will not issue absent "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). An inmate satisfies this standard by demonstrating reasonable jurists would find that her constitutional claims are debatable and that any dispositive procedural rulings by the district court are also debatable or wrong. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001). Here, Mr. Humphrey has not made the requisite showing. Accordingly, the Court **DENIES** a certificate of appealability.

The Clerk is **DIRECTED** to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: September 15, 2026

Frank W. Volk
Chief United States District Judge